UNITED STATE DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Case No.: 1:23-cr-32

United States District Judge

V

JUDGE ROBERT J. JONKER

AUSTIN T. NOEL,

Defendant.

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE FROM THE ADVISORY SENTENCING GUIDELINES

**NOW COMES** the Defendant Austin T. Noel, by his attorney, Thomas Smith, by and through the Smith Law Firm, PLLC, and in this Sentencing Memorandum says as follows:

### I.    INTRODUCTION and PROCEDURAL HISTORY

On January 10, 2023, pursuant to a federal Criminal Complaint, the government charged Mr. Noel (pronounced NOLE) with one count of Sexually Exploiting of a Minor, contrary to 18 USC 2251(a), Receiving and Possessing Child Pornography, contrary to 18 USC 2252A(a)(2)(A), and (a)(5)(B), and Coercing and Enticing a Minor to Engage in Illegal Sexual Conduct, contrary to 18 USC 2422(b).

On January 13, 2023, the undersigned counsel received a text and telephone call from FBI Agent Amanda Becker, who said she had a federal warrant for Mr. Noel's arrest. She gave Mr. Noel two hours to turn himself in to the U.S. Marshal office in Grand Rapids. Counsel called

Mr. Noel, informed him of the warrant and timeframe. Much to his credit, he dutifully turned himself on time. He has been in continuous federal custody in the Newaygo County Jail. He has been compliant in jail, with no known infractions.

On March 24, 2023, pursuant to a plea agreement, and to save the Government the time and expense of empaneling a Grand Jury, Mr. Noel pled guilty in a Pre-Indictment Felony Information to Sexual Exploitation and Attempted Sexual Exploitation of a Minor, contrary to 18 USC 2251(a), a 15-30 year felony, in exchange for the government agreeing not to prosecute him for any violations of 18 USC 2252 and 2252A arising out of Mr. Noel's distribution and possession of child pornography.

> **NOTE**: On November 7, 2022, before the Criminal Complaint was filed, Mr. Noel was arrested and charged with two crimes in the Muskegon 60th District Court for the same conduct in this case: (1) Accosting a Minor Under 16, a 4-year felony, and (2) Using a Computer to Commit a Crime, a 7-year felony. Mr. Noel was arrested at his house in Hudsonville and jailed for two days before posting bond. The case progressed into the Muskegon 14th Circuit Court, where it was dismissed by a signed Nolle Prosequi on March 30, 2023, six days after Mr. Noel pled guilty in this Honorable Court on March 24, 2023. Importantly, Mr. Noel was compliant with all his bond conditions and had no bond violations.

**Sentencing** is set for **Thursday, September 14, 2023, at 3:00 p.m.**

We have reviewed the Pre-Sentence Investigation Report (PSIR) and have no proposed additions and/or corrections and no objections to the Sentencing Guidelines scoring.

Mr. Noel stands ready to accept the sentence of the Court. He readily acknowledges his many mistakes in judgment before and during the commission of this offense. Lest it be said, he is incredibly remorseful and contrite for his actions and their deleterious impact on his family— not to mention the destructive, if not catastrophic, impact on his own life and liberty.

## II.     LEGAL DISCUSSION

A sentencing court must consider several factors in determining a defendant's sentence. *United States v Booker*, 543 US 220 (2005). After calculating the advisory sentencing guidelines, and giving both parties an opportunity to be heard, the Court should consider all the factors under 18 USC 3553(a) to determine whether they support the sentence requested by either party. These factors, as explained in *Kimbrough v United States*, 552 US 85, 101 (2007), require a court to impose a sentence sufficient, but not greater than necessary, to accomplish the sentencing goals as set forth in 18 USC 3553(a).

### A. 18 USC 3553(a) factors:

#### (1) Nature and circumstances of the offense and the history and characteristics of defendant

##### *Nature and Circumstances of the Offense*

Mr. Noel agrees with the stipulated facts as written in the Plea Agreement. (ECF No. 24, PageID.55) and Pre-Sentence Investigation Report (PSIR) (ECF No. 33, PageID.110.) The factual basis can be summarized as follows: Between 2019 and July 2021, two to four years ago, Mr. Noel, who was between 23 and 25 years old, formed an online relationship with a minor girl, MV1, who was between 12 and 14 years old. Mr. Noel persuaded and enticed MV1 to take multiple photographs of herself engaging in sexually explicit conduct, which included the lascivious display of MV1's pubic area, and to send the photos to him via Snapchat.

From May 18-29, 2020, about three years ago, Mr. Noel had numerous Snapchat conversations with another girl, MV2, who was 13 at the time. These conversations were sexual in nature. Mr. Noel tried to make MV2 break up with her boyfriend. Mr. Noel said he was 21 years old when he was actually 24. When MV2 was interviewed on October 28, 2022, she was then 15 and could not, perhaps fortunately, recognize a photograph of Mr. Noel. She also could

3

not recognize his Snapchat account name. However, she did remember "messing with this guy." Neither she nor Mr. Noel sent nude photographs to each other.

From December 2019 to January 2020, Mr. Noel had conversations with another girl, MV3, who was 14 at the time. Mr. Noel engaged in sexually explicit Snapchat conversations with MV3. Mr. Noel said he was 18 when he was actually 23. On October 26, 2022, close to three years later, agents interviewed MV3, who was then 17, and she could not, perhaps fortunately, recognize a photo of Mr. Noel. She also could not recognize his Snapchat account name.

From September 2015 to November 2015, approximately eight years ago, when Mr. Noel was 19 and in the U.S. Marine Corps, he conversed through an application called KIK with MV4, who was 15 and living in Ottawa County. They engaged in sexually explicit messaging for approximately two months, during which photographs were exchanged, including a nude photo from Mr. Noel and a photo from MV4 in her underwear. Numerous text messages and screen shots indicated that they both were in a relationship together. (Mr. Noel was much younger then, at 19, and the age disparity between him and MV4 was only four years.) MV4 eventually reported the conduct to the Ottawa County Sheriff's Office in Michigan and detectives contacted the Naval Criminal Investigative Service (NCIS). Mr. Noel was interviewed and admitted to his conduct. NCIS closed its investigation. Mr. Noel was never arrested or charged for this conduct in the state or military justice systems. What is more, no administrative proceedings were ever initiated against Mr. Noel in the military justice system—i.e., no Non-Judicial Punishment (NJP) and no referral to an Administrative Discharge Board. Mr. Noel was honorably discharged in 2019.

> **NOTE:** The Government is going to attach a police report to its
> Sentencing Memorandum regarding an incident in 2020 from

4

Ottawa County. This incident involved a criminal investigation of alleged sexual assault by Mr. Noel against a woman in her early 20s. Mr. Noel was 24 at the time. We ask this Honorable Court to not consider this report/incident for sentencing purposes. The Probation Department reviewed the police report and chose not to include it in the PSIR under either "other arrests" or "other criminal conduct." We believe that was the correct decision. This incident was a false allegation against Mr. Noel. He passed a polygraph examination on the consensual nature of the incident, and the Ottawa County Prosecutor's Office denied the warrant request, closing the investigation with no criminal charges. Mr. Noel was never arrested. The undersigned counsel represented Mr. Noel in that investigation. If the Court chooses to consider this incident, we ask it to, at most, view it neutrally, i.e., that it have no effect on the Court's sentence.

### *History and Characteristics of the Defendant*

Mr. Noel is 27 (DOB: 01/23/96) and unmarried. He was born in Grand Rapids, Michigan, to the marital union of Jeff and Tina Noel. They divorced when Mr. Noel was around 13. He has two much older siblings—Alexis Shaw, 39, who lives in Sparta, and Jeff Noel, 37, who lives in Spring Lake. Because of the age difference, Mr. Noel did not develop relationships with his siblings until he grew older.

His family moved to Spring Lake, where he grew up and lived with his parents and, for a while, his older siblings, when he was very young. Mr. Noel was raised in a stable and cohesive household, never experiencing any physical or sexual abuse. He was involved with numerous activities growing up, including basketball, soccer, wrestling, karate, choir, band, softball, boy scouts and church. He also liked to exercise, hike, and spend time with his friends.

Mr. Noel graduated from Spring Lake High School in 2014. To follow his life-long dream of serving his country, he enlisted in the U.S. Marine Corps, attending Boot Camp in 2015 at Marine Corps Recruit Depot in San Diego. As one can imagine, this made his family and friends extremely proud. Unfortunately, during Boot Camp, he suffered a debilitating left

shoulder injury, including permanent nerve damage, during a forced march. He still suffers chronic neck and shoulder pain. (Because of his Boot Camp injury, he has been deemed permanently disabled by the Veteran's Administration and has been receiving, since the Summer of 2019, $3,400.00 per month in disability benefits. However, those disability payments have stopped because of Mr. Noel's incarceration.)

His Military Occupational Specialty (MOS) was a Financial Management Resource Analyst. He was stationed at Camp Lejeune, NC. He served with distinction. He was meritoriously promoted early to Corporal and then achieved the notable rank of E-5, Sergeant, during his initial enlistment (four years). He was awarded multiple medals, including a Good Conduct Medal, National Defense Service Medal, and a Global War on Terrorism Service Medal. He was given five Letters of Appreciation by his Commanders for various activities or assignments he performed, all of which helped his unit. Additionally, he attained Expert Rifle and Expert Pistol Badges, which is the highest shooting qualification in the Marine Corps (qualifications range from Expert, to Sharpshooter, and to Marksman). He was honorably discharged in 2019.

After completing his contractual obligation with the Marine Corps, Mr. Noel moved back to Michigan and attended Grand Rapids Community College (GRCC), where he attained two Associates Degrees in December 2021: an Associate of Arts degree and an Associate of Business degree. In 2020, he got a full-time job as an accountant with Big Dutchman in Holland, MI. Impressively, he saved enough money, at the young age of 25, to buy a home (with a mortgage) in Hudsonville in 2021. He was living there with two roommates and employed at Big Dutchman until his arrest in January 2023 on this case. (Notably, Big Dutchman has said it would take Mr. Noel back because of his superior performance as an accountant.)

Since 2021, approximately two years now, Mr. Noel has been in a serious relationship with a woman, M.K., who is 29. She is employed as a substance-abuse coordinator. She is one of Mr. Noel's biggest supporters and one of the best things that has ever happened to Mr. Noel. She knows about the circumstances of this case and stands by him. She sees and understands the considerable good and rehabilitative potential that resides within Mr. Noel.

Mr. Noel's main issue, and the proximate cause of this case, is an untreated sex addiction. As he entered his teen years, he started viewing pornography at age 13. He became very fixated on sexual depictions in his mid-teen years, viewing pornography every day or almost every day. The cravings and compulsions led him to more intensive behavior choices—sexting, sending photographs, and sexual relations. This essentially started when he was 19, in 2015, eight years ago Mr. Noel says he stopped all sex-related criminal activity in August/September 2021.

Mr. Noel also suffers from depression and anxiety. He had serious suicidal ideation after his release from the Muskegon County Jail in the state case. His girlfriend helped him through this dark period and, it appears, prevented (or at least helped to prevent) suicidal ideation from turning into attempted suicide or—even worse—suicide.

In addition to his girlfriend, Mr. Noel did reach out for help for his other mental-health issues, his guilt and shame, and his sexual behavior. From November 2021 to March 2022, he started bi-weekly counseling sessions at the VA, principally for anxiety and depressed feelings (and, at times, for sexual behavior issues). During the state case, while on bond, Mr. Noel also connected with a church in Holland—Our Lady of the Lake—to seek help for the guilt and shame he bears from his transgressions. (He also was enrolled in a baptismal course there—Rite of Christian Initiation of Adults (RCIA)—that, unfortunately, ended with his arrest on this case.) While on bond, he also initiated and began counseling at Berghuis Psychological Services in

7

Grand Rapids for sexual behavior problems. However, once again, his counseling was cut short, because of his arrest in this case. Ultimately, he attended one individual session and two group sessions. The point here is that Mr. Noel exercised initiative to get help. If he was not arrested and detained on the federal case, he would have been out in the community, where he could have more meaningfully addressed his sex-related issues. While incarcerated, Mr. Noel has sought help in the Newaygo County Jail but was told no classes exist for his sex-related issues until after Sentencing occurs. Consequently, Mr. Noel has relied on numerous sessions with Community Mental Health (CMH).

As the Court knows, strong family connections and support are a great asset in preventing recidivism. Fortunately, Mr. Noel has the love and support of his family and extended family, his girlfriend, and his civilian and military friends. Mr. Noel is recognized as a caring, kind, generous, and hardworking person. These strong family and community ties and his continued treatment for his addiction and mental-health issues will reduce the risk that Mr. Noel will engage in the behavior which places him before the Court. We'd ask the Court to credit this.

Attached for the Court's consideration are character letters from the people who know Mr. Noel best. These letters show how Mr. Noel has meaningfully changed by admitting what he has done, owning it, initiating rehabilitative efforts, and re-engaging in his religious faith.

> **Barb King** letter (friend) **(Attachment 1)**
>
> **Amy Nichols** letter (friend) **(Attachment 2)**
>
> **Justin Roy** letter (friend) **(Attachment 3)**
>
> **Timothy Sytsma** letter (boyfriend of Tina Noel) **(Attachment 4)**
>
> **Mary L. Hoffman-Boshers** letter (grandmother) **(Attachment 5)**

**Alexis Shaw** letter (sister) **(Attachment 6)**

**Jeffrey S. Noel** letter (father) **(Attachment 7)**

**Tina Noel** letter (mother) **(Attachment 8)**

**Ricardo Luna** letter (supervisor) **(Attachment 9)**

**Susan L. Davis** letter (co-worker) **(Attachment 10)**

**Emily Fusco** letter (co-worker) **(Attachment 11)**

**Susan Goodrich** letter (USMC Letter of Appreciation) **(Attachment 12)**

**Janncenn Serrano** letter (fellow Marine) **(Attachment 13)**

**Mason Thigpen** letter (friend) **(Attachment 14)**

The salient points of the letters are quoted below:

- "He has worked hard all his life accomplishing many goals in school, the Marines, and as a civilian. He is very smart ." . . . "He has always been a quiet, calm, and lovable person. He genuinely cares and wants the best for people." . . . "He has been remorseful, apologetic, and scared that his family will not love him anymore due to his mistake." **Alexis Shaw**

- "He is very unselfish and will go out of his way to help . . . he surprised his mother with purchasing a car and paying for the first 2 years of the lease." . . . "This charge has deeply impacted Austin and is out of character from the young man." **Amy Nichols**

- "[He is] a very fine young man who would help anyone if needed." . . . "Austin has always been very polite, kind and sweet" . . . "He is a smart young man with a lot of potential." **Barb King**

- "I was always impressed at his level of professionalism, courteousness and integrity." . . . He was always willing to step up wherever help was needed." . . . He was dependable, loyal, honest and fair." . . . "The accusations were out of character for Austin." . . . "Austin is a young man with so much positive potential. He has served our country and positively contributes to our society." **Emily Fusco**

- "Austin is an extremely loving and caring young man and is always there if you need him." **Mary Hoffman-Boshers**

9

- "As a Lance Corporal he was already left in charge with the billet of a Sergeant, which so to speak speaks volumes as the type of person he is." . . . "Austin was usually my recommendation as he was a great character, he never failed to show great initiative and would take it upon himself to help anyone at any time in order to better himself, other Marines and or the unit." **Janncenn P. Serrano**

- "If I ever needed anything, I knew all I had to do was shoot him a text or give him a call." **Justin Roy**

- "Austin is a bright young man who earned his Associates of Art degree [and an] Associate's in Business Accounting." . . . "He is hardworking, motivated with a strong work ethic and has set many goals for his future." . . . "Austin is also willing to help friends and family in their time of need." . . . "Austin has admitted to me the serious lack of judgment which has landed him here and has expressed both remorse & shame for his actions." . . . "Austin understands his choices & actions have not only hurt other people, but also their families" . . . "He had sought out professional help and had also started psychological & group counseling with the hopes to conquer his addiction he felt he had" . . . "He suffers from depression and anxiety." **Tina Noel**

- "Mr. Noel was a very good employee, engaged, interested, willing to help others and usually going for the extra mile." . . . Mr. Noel was respectful to all employees and loyal with his supervisors and Company." **Ricardo Luna**

- "In September 2021, [Mr. Noel] promoted into the position of accountant, where he excelled, learning quickly and taking the initiative on tasks. Austin was very easy to work with and fit into our work 'family' well." **Susan L. Davis**

- "He has always been a great kid. He's always been respectful, truthful, helpful, and courteous to me, his mother, and others." . . . "He also did a surprise visit with a lawn aerator, grass seed, and fertilizer, stating, mom, it's about time you have a nice yard. Then spent the weekend prepping everything. This is the kind of person Austin is." **Timothy Sytsma**

- "He is always the one friend in our friend group that held things together between us all." . . . "He's helped me when I didn't have a car by lending me his for months. Twice he did that." . . . "All I know is people can and

are capable of change only if they are willing. And I know he is willing. He never told me much other than the fact that he knew he needed help and that he was getting it through counseling." **Mason Thigpen**

### (1) The need for the sentence imposed—

#### (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

We believe the imposition of an incarceration period equal to the statutory minimum of 15 years more than reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense.

This case involves sexual exploitation of a child. This is a very serious offense under any reasonable definition of "serious offense." We will not argue otherwise. But we must also consider the offender and remember that Mr. Noel has no prior juvenile adjudications or criminal convictions whatsoever. This case has now resulted in, at the age of 27, Mr. Noel's first criminal conviction—a high-severity federal sex crime against children. Although Mr. Noel's sex addiction started many years ago, his risky sexual behavior against minors elevated only more recently. Although his conduct with MV1 did go from noncontact to contact offending, it occurred only once, not multiple times, and it did not involve sexual penetration of any kind. What is more, Mr. Noel stated he was so scared during and after the incident that he promised himself he would never do that again—and it never happened again. Also, this is not a case where Mr. Noel was previously convicted of sex crimes and reoffended. We ask the Court to credit these mitigating factors.

A sentence of 15 years will most assuredly promote respect for the law and impose more than just punishment for Mr. Noel—and society. As practitioners in the federal justice system, we should remind ourselves how long a 15-year sentence is—and we should not become inured

and desensitized to the numbers and length of time. In plain English, 15 years is a massive amount of time, especially when one thinks about how an inmate's liberty is constricted to a prison cell, and how slowly time passes when that inmate is "doing time," minutes seeming like hours, days seeming like weeks, weeks seeming like months, and so on. Add to this the type of crime for which Mr. Noel will be incarcerated—and how he will be a clear target for victimization in prison.

So many federal crimes carry substantially higher maximum periods of incarceration (and higher mandatory minimums) than state crimes. In addition, the Sentencing Guidelines in the federal system call for so many more enhancements and corresponding elevated levels of incarceration periods. This case started in the state system and it could have remained there as the sole case. If it had, Mr. Noel would have benefited more from qualitative treatment in the community. Also, if Mr. Noel was sentenced in the state system for his then-charged crimes, he likely would have been sentenced to either jail or a substantially lower period of incarceration in prison. Unfortunately, for Mr. Noel, there are federal criminal statutes that cover his conduct— and the Government exercised its discretion and authority to charge Mr. Noel.

A sentence of 15 years will more than reflect the seriousness of the offense, promote respect for the law, and provide just punishment.

### (B) to afford adequate deterrence to criminal conduct;

Two types of deterrence exist, as the Court knows: general and specific: (1) general deterrence relates to deterring members of the community/public from committing such crimes; and (2) specific deterrence relates to deterring a specific person from committing such crimes. Both types of deterrence are more than satisfied in this case with a 15-year sentence.

The general deterrence doctrine is more than met by the imposition of the recommended statutory minimum. To begin, a federal sex crime conviction that cannot be set aside or expunged is perhaps enough, in and of itself, to deter many members of the public from committing such a crime. And then add at least 15 years of confinement and registration as a sex offender, which is tantamount to the proverbial "Scarlet Letter." These outcomes send an incredibly strong deterrence message to members of the community to refrain from participating in the sexual exploitation of minors. This general deterrent message may be reduced to a simple phrase: "BUYER BEWARE: 15 OR MORE YEARS OF INCARCERATION AWAITS YOU!" (NOT TO MENTION HAVING A FEDERAL CHILD SEX CRIME CONVICTION AND BECOMING A SOCIAL PARIAH.)

The specific deterrence doctrine is more than met here. Mr. Noel himself has been adequately deterred. You can see this in his remorse and contrition demonstrated during the pendency of this case, in the PSIR itself, and in the letters submitted to this Court. He now has a serious federal felony sex-crime conviction. He also awaits the imposition of at least 15 years' incarceration. The last thing in the world he would do is commit another federal sex crime—or any crime, for that matter. Mr. Noel knows that federal sex crimes are frequently much more severe in their consequences than in state sex crimes. Also, because of the nature of this federal sex crime, Mr. Noel's period of incarceration may be more punitive and physically dangerous to him in contrast to other federal crimes. In other words, he will be a target for victimization in prison. Finally, Mr. Noel will be subjected to sex offender registration for multiple decades and that will reduce the risk of him becoming a repeat offender and deter him from future criminal conduct. Mr. Noel has been adequately deterred.

**(C) to protect the public from further crimes of the defendant; and**

The public will surely be protected from further crimes of Mr. Noel for as long as he is incarcerated—in this case, at least 15 years. The public will also be protected after Mr. Noel's release from incarceration, because the Court must impose a term of Supervised Release from five years to life—and Mr. Noel will be required to register as a sex offender for multiple decades. However, we believe the real protection from further crimes resides within Mr. Noel himself. He has is trying to get to the root cause of his addiction issues and to educate himself. He has a lot of work to do. But he is prepared and wants to do the work. He has told the undersigned counsel, many times, that he is done with this type of activity—in all its insidious permutations and combinations. When he gets effective treatment, he wants to, at some point, devote a portion of his life to educating others how this type of activity can destroy a person and the person's relationships with family and friends.

In short, Mr. Noel has had a transformative experience because of this case—and he wants to lead a law-abiding life and be the best person he can be—to include the possibility of being the best husband and father he can be. He fell prey to addiction and poor choices. It is very clear he has learned from his poor choices, actions, and the circumstances of this case—and he will not be repeating any behaviors that could lead to another criminal case.

### (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

For mental/emotional care, Mr. Noel has a history of depression and anxiety that pre-date this case. He will need ongoing treatment for those issues, even though he was attending counseling at the VA. He will need intensive treatment for his sex addiction and sex-related issues.

For medical care, Mr. Noel will need additional medical care for his pre-existing shoulder injury (chronic neck and back pain) that caused his 100% disability in the USMC. He may also need additional medical care for a degenerative disc disease, a loose/floating rib, knee pain, heel spurs, plantar fasciitis, high cholesterol, stomach ulcers, and potentially diabetes. Finally, he may need help for teeth grinding (for which he uses bite splint at night, similar to a sports mouthguard).

For educational and vocational training, Mr. Noel would like to attend classes related to business and accounting. He'd also like classes involving financial services (he'd like to be trained as a Financial Advisor). Also beneficial for him would be to obtain training to be a mechanic. One of his goals is to establish a business he learned about in North Carolina when he was in the Marines: a drive-thru workshop/garage for motor vehicles. It supplies all the necessary tools and equipment to analyze, fix, and maintain motor vehicles without having to purchase the tools and equipment to fix and maintain those vehicles.

Mr. Noel would also like to teach others about sex addiction. Consequently, he feels he would benefit by taking classes that involve gaining public speaking skills.

The defense would request, also, that the Court recommend placement in the Bureau of Prisons (BOP) at Englewood, Colorado, because we are told it has a "Veteran's Only" unit there.

### (2) The kinds of sentences available;

The Court must sentence Mr. Noel to a minimum term of imprisonment of 15 years up to and including a maximum term of 30 years. 18 USC 2251(a)and (e).

The Court must also impose a term of supervised release of 5 years to life. 18 USC 3583(k).

15

A probationary period is precluded by statute and Sentencing Guidelines. 18 USC 3561(a)(1); USSG 5B1.1(b)(2).

The maximum fine to be imposed by statute is $250,000.00. 18 USC 3571(b).

The fine range under the Sentencing Guidelines is $40,000.00 to $250,000.00. USSG 5E1.2(c)(3).

The Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 requires the Court to assess not more than $35,000.00 for a conviction of any other offense for trafficking in pornography and not more than $50,000.00 for a conviction of a child pornography production offense.

The costs of prosecution must be imposed as required by statute. USSG 5E1.5.

Finally, restitution must be ordered by statute and Sentencing Guidelines. 18 USC 3663A; USSG 5E1.1.

> **(3) The kinds of sentence and the sentencing range established for the applicable category offense committed by the applicable category of defendant as set forth in the guidelines--;**

According to the Probation Department, and the defense, the Sentencing Guidelines established for Mr. Noel's offense are as follows:

**Criminal History:** **Category I**

**Offense Level:**
Base Offense Level: 32
Specific Offense Characteristic: +2 (minor victim 12-15)
Specific Offense Characteristic: +2 (producing image of masturbatory act)
Specific Offense Characteristic: +2 (use of a computer)
Chapter Four Enhancement: +5 (pattern of activity involving prohibited sexual conduct)
Adjusted Base Offense Level: 43
Acceptance of Responsibility: -3

**Total Offense Level:** **40**

**Sentencing Guidelines range: I-40, 292-365 months**

    **(4) Pertinent policy statements issued by the Sentencing Commission;**

       **5H1.3 – Mental and Emotional conditions;**

Mr. Noel suffers from Anxiety and Depression, which he is medicated for in the Newaygo County Jail. He also suffers from an untreated sex addiction.

    **(5) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;**

See Section B, below, Motion for Downward Variance.

    **(6) The need to provide restitution to any victims of the offense.**

Restitution is mandatory and to be determined.

## III.   ACCEPTANCE OF RESPONSIBILITY (USSG 3E1.1)

The PSIR states that a 3-level reduction for acceptance of responsibility should be given. We agree. Mr. Noel takes full responsibility for his actions. He understands he created the whole situation. Mr. Noel has clearly demonstrated acceptance of responsibility by pleading guilty very early in a pre-Indictment Complaint or Felony Information. We cannot stress this enough. This saved the government the time, effort, and expense in empaneling a Grand Jury, attending hearings, litigating motions, interviewing witnesses, preparing for Jury Trial, and putting the victims through an experience that may re-victimize them in many ways. Importantly, Mr. Noel has stated on the record, including numerous times off the record, even from the beginning of his state case, that he is guilty of what he has been convicted of and does not want to put anyone, especially the victims, through a Jury Trial.

We asked the Court to credit all this.

## IV.    MOTION FOR DOWNWARD VARIANCE

The Probation Department is recommending 336 months (28 years) of incarceration and 10 years of Supervised Release. The advisory Sentencing Guidelines range is 292-365 months (24.3 years to 30.4 years). We ask the Court for a downward variance from the advisory Sentencing Guidelines range (and the PSIR recommendation) and to impose the statutory minimum of 180 months (15 years) and five years of Supervised Release (for a total of 20 years).

The Sentencing Guidelines are just "one factor among several courts must consider in determining an appropriate sentence." *Kimbrough, supra* at 105. While the Guidelines must serve as the "starting point and initial benchmark," and must "be kept in mind throughout the [sentencing] process," the Guidelines range constitutes only a touch-stone in the district court's sentence considerations. *Id.* at 128. The sentencing court "may not presume that the Guidelines range is reasonable." *Gall v United States*, 552 US 38, 39-50 (2007) The Court's central task must be to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 USC 3553(a)(2), regardless of whether the sentence is probation, time served, a mandatory minimum sentence, the statutory maximum, or somewhere in between.

We believe a downward variance to 180 months, which is significant, is justified by a number of significant factors: Mr. Noel's prompt pre-Indictment resolution of this case, his lack of *any* criminal convictions or juvenile adjudications, his notable military service and employment record, his acceptance of responsibility and remorse, his age, his mental- and physical-health issues, his loss of his disability payments, his high potential for victimization in prison, his laudatory conduct on bond in the state case (and compliant behavior in jail), his attempts to get the help he needs, i.e., his rehabilitation efforts, and his family and community support. Finally, we believe that a 180-month sentence would reflect the seriousness of the offense, provide adequate deterrence—

general and specific—as well as just punishment. See Section II (A) above for the specific details supporting these assertions.

Mr. Noel's conduct in the instant offense was very serious; we will not argue otherwise. However, during the time of the instant offense, Mr. Noel was acting under an untreated sex addiction. In short, Mr. Noel is an addict but of a different kind than we ordinarily see with someone addicted to alcohol or drugs. And we must remember that, in the justice system, we have reached, or will reach, a tipping point that treatment is the principal remedy for addicts, not warehousing. We believe Mr. Noel falls into the treatment category and this, in itself, justifies, at least in part, a downward variance in the advisory Sentencing Guidelines to the statutory minimum. Mr. Noel was engaged in treatment and rehabilitation but it was cut short by his arrest. He has also been fully compliant with his bond conditions and has restored—indeed, transformed—his relationships with his family members. We are aware of no jail infractions for Mr. Noel while he has been incarcerated since January 13, 2023, approximately eight months at the time of Sentencing. We ask the Court to credit all these factors for a downward departure.

Case law should also be considered. Whether it comes in the form of departures or variances, courts have recognized the often excessive nature of the advisory guidelines in cases like Mr. Noel's. In *United States v Studabaker*, 578 F3d 423, 431 (6th Cir. 2009), the Sixth Circuit affirmed a sentence of 136 months for a defendant who had been a thirty-year-old Marine communicating with an eleven-year-old girl in England. This defendant met the girl, took her to France, and had sex with her there (she was then twelve years old). *Id.* at 426. The district court in that case had considered defendant's online relationship with a ten-year-old in Australia; a relationship the defendant had had with two girls in Michigan through a soldier pen-pal program; a relationship he was trying to cultivate with the daughter of a handicapped woman with whom

19

he had become involved after his arrest; a police report that the defendant had had inappropriate sexual contact with his niece; and the defendant's attempts to correspond with the victim of the offense—even after the defendant was arrested. *Id*. at 427-28. (Interestingly for comparison's sake, in England, the defendant had been convicted of child abduction and incitement to gross indecency, receiving a sentence of four and a half years. *Id*. at 426.)

In *United States v Richards*, 659 F3d 527 (6th Cir. 2012), the Sixth Circuit affirmed a 16-year sentence when the defendant (in his mid-20s) had manufactured child pornography with a 14-year-old boy and engaged in child-pornography-related conduct as a commercial enterprise. *Id*. at 531-32, 551-52. At sentencing, the defendant had faced an offense level of 48, a criminal-history category of I, and an advisory guideline range of life. *Id*. at 533.

In *United States v Brattain*, 539 F3d 445, 446-47 (6th Cir. 2008), the Sixth Circuit vacated a 12-year sentence for a defendant who had sexually abused his daughter from the time she was three years old until she was 10. In that case, the PSIR had "suggested a total offense level of 38 and a criminal history category of I, resulting in an advisory guidelines range of 235 to 293 months' incarceration." *Id.* at 446. Before it finished its opinion vacating the sentence on a guideline-application issue, the Court emphasized that it was "important to note that while the district court made one error in calculating the guidelines, the district court should remain mindful that the sentencing guidelines are merely advisory" and "they are not determinative of a district court's ultimate decision when sentencing a defendant." *Id*. at 448-49. "Here," the Court said, "the district court correctly applied the § 3553(a) factors and gave more than adequate reasoning in support of [the defendant's] sentence." *Id*. at 449. The Court hoped "[t]he same detailed application of the § 3553(a) factors and explicit reasoning in support of the sentence" would "be repeated on remand." *Id*. In essence, the Sixth Circuit asked the sentencing court to

reimpose the twelve-year sentence—simply without the guideline-application error. The sentencing court did so. See *United States v Brattain*, No. 1:06-CR-293 (W.D. Mich. Jan. 13, 2009).

Another downward variance occurred in *United States v Davis*, 20 F4th 1217 (8th Cir. 2021). In that case:

> Fredrick M. Davis pled guilty to attempted coercion or enticement of a minor in violation of 18 U.S.C. § 2422(a). The district court sentenced him to time served and 120 months' supervised release, including one year of home confinement.
>
> In 2019 Davis contacted "Addyson" and "Sara" online. They identified themselves as 14-year-old girls, but were actually personas of undercover law enforcement. Davis asked them to meet with him in a hotel in Dickinson, North Dakota. He sent them sexually explicit messages and a graphic picture, and asked them to send him explicit pictures.
>
> Davis was arrested at the North Dakota hotel where he intended to meet the girls. Under a pretrial agreement, Davis pled guilty to one charge—attempted coercion or enticement of a minor. His advisory guideline range was 46-57 months. As required by the pretrial agreement, the parties jointly recommended a 60-month sentence and five years of supervised release. The district court sentenced Davis to time served (two months) and 120 months of supervised release, including one year of home confinement, participation in sex offender treatment, and registration as a sex offender. *Davis, supra* at 1219–20.

In its statement of reasons, the district court in *Davis* described why it varied below the guidelines:

> Upon its own motion, the Court finds that a downward variance or non-Guideline sentence is appropriate in this case. The Defendant, who is 55 years old, has a criminal history category of I, based upon zero (0) criminal history points. He honorably served, with commendations, in the United States Marine Corps for twenty years. Since January 2020, the Defendant has been on pretrial supervised release

21

without incident and has been successfully employed on a full-time basis. He has expressed deep remorse for the offense conduct in this case. *Id.* at 1220.

In affirming the downward variance, the 8th Circuit Court of Appeals held:

18 U.S.C. § 3553(a)(1) instructs the sentencer to consider a defendant's history and characteristics. In his meritorious military career—half his adult life—he earned numerous awards and commendations, including the Combat Action Ribbon and recognitions for service in Iraq and Somalia. ("Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."). *He also did more than simply staying out of trouble while on pretrial release: he acknowledged his conduct, expressed remorse, sought ongoing treatment for his service-related PTSD, and got and maintained a job.*" *Davis*, *supra* at 1221. [Emphasis added.]

In *United States v Huckins*, 529 F3d 1312 (10th Cir. 2008), a child pornography case, the 10th Circuit upheld a downward variance to 18 months from a Guideline range of 78 to 97 months. In doing so, the Court found that the sentence was substantively reasonable, in part, on the district court's consideration of the defendant's history and characteristics that counterbalanced the nature and seriousness of the offense—namely, no real criminal record, the defendant had significant depression during commission of offenses, obtained licenses for employment and maintained steady employment before being charged, consistently improved his life through his own efforts and those of his family, did not occupy a position of trust with children, and demonstrated repeated remorse and an exceptional understanding of how his conduct affected his life and the lives of his family. *Id.* at 1319. Finally, the Court considered the many letters of support it had received. *Id.*

In *United States v Pauley*, 511 F3d 468 (4th Cir. 2007), a child pornography case, the 4th Circuit upheld a substantial 36-month downward variance to 42 months from a Guideline range of 78 to 97 months. It considered the 3553(a) factors, including defendant's deep remorse, his lost job and pension, and that a lifetime of supervised release would reduce the risk of becoming a repeat offender and deter him from future criminal conduct.

According to the U.S. Sentencing Commission, the national average sentence in fiscal year 2022 for sexual abuse was 207 months--"[t]he average sentence for offenders convicted of *production of child pornography* was 265 months." See U.S. Sentencing Commission, *Quick Facts: Sexual Abuse Offenders* (Fiscal Year 2022), available at https://www.ussc.gov/sites/default/files/pdf/reasearch-and-publications/quick-facts/Sexual_Abuse_FY22.pdf. The national average sentence for production offenses involving mandatory minimums was 290 months. *Id*. The average sentence in the 6th Circuit for sexual abuse was 238 months. See https://ida.ussc.gov/analytics/saw.dll?Dashboard. Again, although this case involved child exploitation with no sexual penetration, the advisory Guidelines score and PSIR recommendation are both higher than these averages.

In the end, we believe the foregoing case law, comparison statistics, and other factors, including Mr. Noel's acceptance of responsibility, his lack of any criminal convictions/juvenile adjudications, his physical- and mental-health issues, including sex addiction, his high potential for victimization in prison, and other unique circumstances, take this case out of the proverbial "heartland" of the Guidelines and support a downward variance to 180 months. Such a sentence is sufficient, but not greater than necessary, to accomplish the sentencing goals as set forth in 18 USC 3553(a). *Kimbrough, supra.*

**WHEREFORE**, defendant moves this Honorable Court to grant his motion for a downward variance from the recommended advisory Sentencing Guideline range of 292 to 360 months and sentence him to 180 months.

Respectfully submitted,

**THE SMITH LAW FIRM, P.L.L.C.**
Attorneys for Defendant

Date: August 31, 2023

/s/ Thomas Smith
**Thomas Smith (P-44764)**